Billie SHAW et al., Plaintiffs,

v.

GOVERNING BOARD OF the MODES-TO CITY SCHOOL DISTRICT and Modesto High School District; Clifford M. Hardin, Secretary of the United States Department of Agriculture, Roy W. Lennartson, Administrator, Consumer Food and Marketing Service, United States Department of Agriculture, Charles M. Ernst, Director, Western District, United States Department of Agriculture, George Randall, Director, Food Program Services, Western District, United States Department of Agriculture, Defendants.

Civ. No. S-1336.

United States District Court,
E. D. California.

March 6, 1970.

Kelley, Livingston, Zavala, Neumark, Lowenstein & Mattison, Modesto, Cal., for plaintiffs.

A. J. Shaw, Deputy County Counsel, Modesto, Cal., John P. Hyland, U. S. Atty., E. D. of Cal., Sacramento, Cal., Thomas C. Lynch, Atty. Gen., of Cal., Sacramento, Cal., for defendants.

## MEMORANDUM OPINION

MacBRIDE, Chief Judge.

This case is concerned with interpretation of one sentence in Section 9 of the National School Lunch Act:

Such meals shall be served without cost or at a reduced cost to children who are determined by local school authorities to be unable to pay the full cost of the lunch. 42 U.S.C.A. § 1758 (1969)

The plaintiffs in this class action are families with children attending Modesto City Schools. The Modesto City School District and the Modesto High School District have participated in the National School Lunch Program since 1967. Plaintiffs sought to enjoin the implementation of the School Board's proposed 1969–70 free lunch eligibility standards and to require, as a condition of continued participation in the Act's school lunch program, adoption of a standard "based on a determination of children in the district who are unable to afford the full cost of a lunch." The precise legal issue involved is whether, under the Act, a school board may base its free lunch eligibility standards upon the amount of money it wishes to commit to the program. The defendant School Board argues that it may. Plaintiffs argue that eligibility must be based upon a child's ability to afford the cost of a lunch without regard to the total expenditures which may result.

During the summer of 1969 the Modesto School Board held a series of meetings at which it formulated plans for operation of the district's school lunch program in the 1969–70 school year. The evidence is undisputed that it finally decided to adopt an automatic eligibility standard for free lunches designed to restrict participation to 400 children. Taking into account the funds available and the cost of providing free lunches, the Board estimated that it could afford to supply only 400 lunches per day. The Board first set its eligibility standard at a family income level of 100% of the 1969 poverty level as determined by the

Office of Economic Opportunity (OEO). It later lowered this to 80% of the OEO poverty level when calculations disclosed that the 100% figure would qualify too many children. The Board also provided for participation by other children from families with an income above the 80% level under certain circumstances and upon special application.

Before the Board could finally adopt this program, plaintiffs brought this suit. This court issued a preliminary injunction on September 24, 1969, enjoining the Board from adopting or implementing its proposed 1969–70 plan and requiring it to administer its school lunch program according to the 1968–69 plan until decision of this case.

I have concluded that the School Board's actions in formulating its proposed 1969–70 eligibility standards contravened the National School Lunch Act. Consequently, at the conclusion of the trial in this case, I issued permanent injunction requiring, as a condition to further participation in the school lunch program under the Act, that the School Board adopt an eligibility standard in conformity with the Act as will be hereinafter described.

A complete explanation of the complex workings of the Act is not essential to this opinion.[1] The relevant details are as follows. Federal aid to local schools participating in the program is channeled through the states[2] and consists of commodities and cash grants. The Department of Agriculture provides commodities under section 6 of the School Lunch Act (section 6 commodities),[3] under section 32 of Public Law 320, 74th Cong. (section 32 commodities)[4] and under section 416 of the Agriculture Act of 1949 (section 416 commodities).[5] The commodities are free to local schools except for a nominal handling charge.

There are two types of cash grants—so-called "special assistance money" (described *infra*) and section 4 money.[6] The section 4 money is disbursed on the basis of so much for every lunch served in the district. Modesto schools currently receive four cents per lunch served whether it is a free, reduced price or fully paid lunch. The effect of the receipt of the commodities and section 4 money is to reduce the cost to the school of every lunch served. The school meets the remaining cost of each lunch by collecting it from the student who can afford to pay for it or by appropriating a combination of school budget funds and "special assistance money" for students unable to pay.

In 1962 Congress inaugurated the so-called "special assistance" appropriations to help "schools drawing attendance from areas in which poor economic conditions exist" meet the requirement of providing free or reduced price lunches to those unable to pay the full cost.[7] In 1968–69 Modesto schools received $21,824 of this special assistance money to pay the cost of serving free and reduced price lunches. The School Board spent in addition $11,000 of its money for this purpose.

The evidence indicated that the average cost of every lunch served by the Modesto district, including all overhead and administrative expenses, is fifty-six cents (fair market value). This includes two cents worth of section 6 commodities and ten cents worth of section 32 and section 416 commodities. Deducting in addition to the commodities the four cents in section 4 money received for every lunch, the remaining cost to the school is forty cents for each lunch served. That is the average price of a lunch to the student who pays. For each free lunch served the school must

1. See Briggs v. Kerrigan, 307 F.Supp. 295 (D.Mass.1969), for a more complete discussion of the operation of the National School Lunch Act.

2. In California the program is administered by the Department of Education.

3. 42 U.S.C.A. § 1755 (1969).

4. 7 U.S.C.A. § 612c (1964).

5. 7 U.S.C.A. § 1431 (1969).

6. 42 U.S.C.A. § 1753 (1969).

7. 42 U.S.C.A. § 1759a (1969).

defray the forty cent cost.[8] The special assistance money is provided for this purpose. Although the special assistance money is allocated initially on a lump sum basis, a school district may not receive more than twenty-five cents per lunch. That means that each free lunch served by Modesto schools would cost the schools a minimum of fifteen cents, and more depending upon the number of free lunches served and the amount of special assistance money received. There are three ways to meet this additional cost of free lunches: (1) Increase the price charged for lunches over cost sufficient to meet the additional cost of free lunches, (2) Appropriate money from the general school budget, or (3) A combination of these two. Modesto schools employed the second because they felt the first was illegal. A Department of Agriculture official testified that the first alternative was not illegal, and I know of nothing in the statute or the regulations which would proscribe it.

In preparing its plan for operation of the 1969–70 lunch program, the Board expected $22,000 in special assistance money. It allocated an additional $7,000 of district money and calculated how many free lunches it could provide with this amount. The estimate was 400 lunches per day. The Board then set its eligibility requirements to meet its estimate. The plaintiffs contend that the statute does not permit the Board to consider available funds in determining eligibility. In their view the statute requires the Board to set eligibility requirements in terms of need alone; the Board must then finance however many free lunches result, regardless of total cost, if the district continues in the federal lunch program.

My decision in plaintiffs' favor is primarily based upon the plain meaning of the statutory language. Where the meaning of a statute is plain, it must be obeyed, regardless of the inconvenience this may cause. United States v. Fisher, 2 Cranch (U.S.) 358, 2 L.Ed. 304 (1804). And, as Mr. Justice Holmes put it in Roschen v. Ward, 279 U.S. 337, 339, 49 S.Ct. 336, 73 L.Ed. 722 (1928): "[T]here is no canon against using common sense in construing laws as saying what they obviously mean." Section 9 says:

> Such meals shall be served without cost or at a reduced cost to children who are determined by local school authorities to be unable to pay the full cost of the lunch. 42 U.S.C.A. § 1758 (1969)

The vagueness in the statute arises from the absence of criteria by which the school authorities are to determine who the needy children are; however, it is clear to me the statute mandates that the school authorities make a determination of which children are unable to pay, not how many children the school can afford to feed.

It is possible that in determining who is unable to pay, the School Board could have reached the same result by concluding that only children from families with incomes below 80% of the 1969 OEO poverty level could not pay the full cost of a lunch. But the Board made no determination of which *children* were unable to pay; its determination was based on how much the *schools* could afford to pay. That was where the determination was faulty and unacceptable under the Act. While there is nothing to indicate that the School Board was not acting in utmost good faith, it did not comply with the

---

8. The Act speaks of "reduced cost" lunches. 42 U.S.C.A. § 1758 (1969). For ease of administration Modesto schools do not provide reduced cost lunches as such to students who would be eligible for a reduction in price. Instead they provide so many free lunches for each one purchased by the student depending on need. This has the effect of providing reduced cost lunches without the additional administrative effort necessary to give various students different reductions on the cost of each lunch. So for the purposes of this discussion, it is only necessary to think in terms of free lunches provided by the schools.

Act, and I must set aside its eligibility standards.

■ If, as the School Board argues, Congress did not intend that local school expenditures for free and reduced price lunches be unlimited, some indication of this should be expressed elsewhere in the statute. But it is nowhere stated that there should be a limitation on local school money in the school lunch program. The legislative history and the 1962 special assistance amendment indicate just the opposite. The committee hearings indicate that Congress expected local authorities to contribute their fair share.[9] The special assistance appropriations inaugurated in 1962, which were specifically designed to help poor districts meet the cost of providing free or reduced price lunches, is clear evidence to me Congress intended local schools to insure that all needy children received lunches.[10] The unfortunate part of the legislative scheme is that poorer districts, who are least able to bear the added cost of providing free lunches, are precisely the ones required to provide the most free lunches. But until Congress alters its legislative scheme, I am bound to enforce it as written.

■ Since the federal school lunch program is purely voluntary, a school district which feels it cannot afford to meet the requirement of providing free lunches is free to drop out. So long as it chooses to participate, however, the district must comply fully with the terms of the Act.

Upon conclusion of the trial of this case, I issued a permanent injunction implementing my ruling. Its terms are set out in the margin.[11]

---

9. Hearings on S. 1820, 1824, "Assistance to States for School-lunch Programs," 78th Cong., 2d Sess., May 2–5, 1944, at 25–26, 47 and 63. Hearings on H.R. 2673, 3370, "Lunch Program," 79th Cong., 1st Sess., March 23–May 24, 1945 (House Agriculture Committee) at 21, 79 and 103.

10. See 42 U.S.C.A. § 1759a (1969).

11. It is hereby ordered that as a condition of participation in the school lunch program under the National School Lunch Act the Governing Board of the Modesto City School District and High School District, and its officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with it, except the State of California and the federal defendants named herein, be, and are hereby enjoined from:

1. Failing or refusing to adopt an eligibility standard which is based on a determination of children in the district who are unable to afford the full cost of a lunch.
2. Failing or refusing to make such a determination in terms of an eligibility criterion which includes, but need not be limited to, consideration of income, family size, and the number of children in school.
3. Determining eligibility for participation in the free lunch program by considering the ability of the District to finance the free or reduced price lunch program.
4. Failing or refusing to provide a free or reduced price lunch to children whose family income is below the 1969 poverty level as determined by the Office of Economic Opportunity until such time as the Board complies fully with the provisions of this order set out above.