**Aline GIGUERE et al.**

**v.**

**John J. AFFLECK, Individually and in his capacity as Director of the Rhode Island Department of Social and Rehabilitative Services.**

**Civ. A. No. 5273.**

United States District Court, D. Rhode Island.

Jan. 28, 1974.

John M. Roney, and Jay C. Lipner, of R. I. Legal Services, Inc., Providence, R. I., for plaintiffs.

W. Slater Allen, Jr., and Donald P. Ryan, Asst. Attys. Gen., for R. I., Providence, R. I., for defendant.

## OPINION

PETTINE, Chief Judge.

This civil class action for declaratory and injunctive relief alleges that the defendant, under color of state law, has deprived the plaintiffs and their class the rights and benefits to which they are entitled under the Federal Food Stamp Act, 7 U.S.C. § 2011 et seq., and the regulations and instructions promulgated thereunder by the United States Department of Agriculture.

### *Jurisdiction*

It is urged that jurisdiction be based on 28 U.S.C. §§ 1331, 1337 and 1343(4).

Jurisdiction is noted under sections 1337 and 1343(4).[1]

### *Section 1337*

*A proceeding arising under an Act of Congress Regulating Commerce*

"The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce. . . ." 28 U.S.C. § 1337.

While the clement recognition in the Act's declaration of policy which states that limited food purchasing power of low income families contributes to their hunger and malnutrition is the more humane intent expressed,[2] the fact remains that this was not the only purpose articulated by Congress. It also declared:

> ". . . . The Congress further finds that increased utilization of food in establishing and maintaining adequate national levels of nutrition will promote the distribution in a beneficial manner of our agricultural . . . economy as well as result in more orderly marketing and distribution of food. . . ." 7 U.S.C. § 2011.

Furthermore as has been argued to the court, the Food Stamp Program was formulated in the House Agriculture Committee and the Senate Committee on Agriculture and Forestry. (See Senate Report No. 1124, 88th Cong., 2nd Sess. (1964); House Report No. 1228, 88th Cong., 2nd Sess. (1964), U.S.Code Cong. & Admin.News 1964, p. 3275; Senate Report No. 292, 91st Cong., 1st Sess. (1969); House Report No. 1402, 91st Cong., 2nd Sess. (1970), U.S.Code Cong. & Admin.News 1970, p. 6025.) Unlike other public assistance welfare programs which are implemented in the Department of Health, Education and Welfare, this one is implemented and administered by the Department of Agriculture. Additionally it must be noted that to base jurisdiction on section 1337, ". . . it is not requisite that the commerce clause be the exclusive source of Federal power; it suffices that it be a significant one." Murphy v. Colonial Federal Savings and Loan Association,

1. As to sec. 1331 see Zahn et al. v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511, argued Oct. 16, 1973—decided Dec. 17, 1973.

2. As noted in United States Department of Agriculture v. Moreno, 413 U.S. 528, 93 S. Ct. 2821, 37 L.Ed.2d 782 (1973) the Congressional declaration of policy found in Section 2 of the Food Stamp Act, 7 U.S.C. § 2011, provides that,

> ". . . the limited food purchasing power of low-income households contributes to hunger and malnutrition among members of such households . . . To alleviate such hunger and malnutrition, a food stamp program is herein authorized which will permit low income households to purchase a nutritionally adequate diet through normal channels of trade."

388 F.2d 609, 615 (2d Cir. 1967).[3] In Moreno v. United States Department of Agriculture, 345 F.Supp. 310 (D.D.C. 1972), aff'd 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1923), supra N. 2, we find supporting language at page 313:

> "Under Section 1337, 'it is not requisite that the commerce clause be the exclusive source of federal power; it suffices that it be a significant one.' (citing *Murphy v. Colonial Federal Savings and Loan* Association, supra.)
>
> In addition to the alleviation of hunger and malnutrition, a major congressional purpose in establishing the food stamp program was to 'strengthen our agricultural economy, as well as [to] result in more orderly marketing and distribution of food.' [Footnote: 7 U.S.C. sec. 2011. See also the preamble to 78 Stat. 703 (1964); 7 U.S.C. sections 2012(b) and 2019(a); H.R.Rep.No.1228, 88th Cong., 2nd sess. (1964).] Given that purpose, it is clear that the Commerce Clause was a 'significant source of Federal power' behind the Food Stamp Act, and that this action 'arising under' that act, is properly within the jurisdiction of this court." [4]

This broad approach is in accord with the better view of providing a federal forum to cases raising questions of the interpretation of federal statutes, without regard to the amount in controversy. See C. Wright, Federal Courts, sec. 32 at 110 (2nd Ed. 1970).

It is clear that the Program, arising under an act of Congress, has a sufficient agricultural and commercial purpose to provide section 1337 jurisdiction.

*Section 1343*

28 U.S.C. § 1343(4) provides an additional jurisdictional basis for the plaintiffs' claim.

While other courts may differ on this question, see, e. g. Wynn v. Indiana State Department of Public Welfare, 316 F.Supp. 324 (N.D.Ind.1970), I find compelling the reasoning of the Fifth Circuit that an action alleging that under color of state law certain federal statutes or regulations are being violated may state a claim under 42 U.S.C. § 1983, even absent an allegation of constitutional invalidity. Gomez v. Florida State Employment Service, 417 F.2d 569 (5th Cir. 1969).

> "It is true that § 1983 has quite often been used as a means of protecting Constitutionally guaranteed rights, particularly in the area of equal protection of the Negro. But the language of this civil rights statute is broad: it is a violation of the statute to transgress '*any* rights, privileges, or immunities secured by the Constitution and *laws*' of the United States. 42 U.S.C.A. § 1983 (emphasis added). Moreover, the Supreme Court in Peacock v. City of Greenwood, 1964, 384 U.S. 808, 86 S. Ct. 1800, 16 L.Ed.2d 944, clearly indicated that § 1983 was applicable when statutory, as well as, constitutional 'rights, privileges and immunities' were involved. The Court said: 'Under 42 U.S.C.A. § 1983 * * * the officers may be made to respond in damages not only for violations of rights conferred by federal equal civil rights laws, but for violations of other federal constitutional and statutory rights as well.' 384 U.S. at 829–830,

3. Cf. jurisdiction in various cases indirectly affecting commerce—Mulford v. Smith, 307 U.S. 38, 46, 59 S.Ct. 648, 83 L.Ed. 1092 (1939); Williams v. Jacksonville Terminal Co., 315 U.S. 386, 390, 62 S.Ct. 659, 86 L.Ed. 914 (1942); Stark v. Wickard, 321 U.S. 288, 290 N. 1, 64 S.Ct. 559, 88 L.Ed. 733 (1944); Capital Service, Inc. v. N. L. R. B., 347 U.S. 501, 74 S.Ct. 699, 98 L.Ed. 887 (1954); Ivy Broadcasting Co., Inc. v. A. T. & T., 391 F. 2d 486 (2nd Cir. 1968); Shaw v. Governing Board of Modesto City School District, 310 F.Supp. 1282 (E.D.Cal.1970).

4. Capital Service, Inc. v. N. L. R. B., *supra*; Ivy Broadcasting Co., Inc. v. A. T. & T., *supra*; Marquez v. Hardin, 339 F.Supp. 1364 (N.D.Cal.1969); Shaw v. Governing Board of Modesto City School District, *supra*; Imm v. Union R R Co., 289 F.2d 858, 860 N. 3 (3rd Cir.) cert. denied, 368 U.S. 833, 82 S.Ct. 55, 7 L.Ed.2d 35 (1961).

86 S.Ct. at 1813, 16 L.Ed.2d at 958. See also, Sheridan v. Garrison, 5 Cir., 1969, 415 F.2d 699, at 705, 706."

*Id.* at 579. See also Bass v. Rockefeller, 331 F.Supp. 945, 949 n. 5 (S.D.N.Y. 1971); Note, Federal Jurisdiction over Challenges to State Welfare Programs, 72 Colum.L.Rev. 1404, 1417–21 (1972).

In McClellan v. University Heights, Inc., 338 F.Supp. 374 (D.R.I.1972), this Court stated:

> "It is clear that 42 U.S.C. § 1983 is an 'Act of Congress providing for the protection of civil rights' under 28 U.S.C. § 1343(4). York v. Story, 324 F.2d 450 (9th Cir. 1963). See Rosado v. Wyman, 397 U.S. 397, 403, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), Jackson v. Bishop, 404 F.2d 571, 573 (8th Cir. 1968). The complaint here indicates a denial of due process by conduct of defendants which constitutes state action and is sufficient to support § 1343(4) jurisdiction. Brown v. Strickler, 422 F.2d 1000 (6th Cir. 1970). Further, jurisdiction under § 1343(4) is not dependent on a finding of jurisdiction under § 1343(3)."

*Id.* at 380. See also Hall v. Garson, 430 F.2d 430, 438 (5th Cir. 1970); Jones v. Alfred H. Mayer Co., 392 U.S. 409, 412, n. 1, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968) (§ 1343(4) jurisdiction over a claim based on 42 U.S.C. § 1982).

In the instant case "the aim of the Plaintiffs, through appropriate judicial remedies, is to secure for themselves the fundamentals of human dignity." Gomez v. Florida State Employment Service, *supra,* 417 F.2d at 579. The plaintiffs here seek to preserve the fundamental human right to a nutritionally adequate diet, which Congress has seen fit to promote under the Food Stamp Act. Since the language of 42 U.S.C. § 1983 is broad, in that it is designed for the redress of violations of "*any* rights, privileges, or immunities secured by the Constitution and *laws*" of the United States, it matters not whether particular state action is alleged to be a violation of the Constitution, or merely of rights secured by federal statute or regulation. See Bomar v. Keyes, 162 F.2d 136 (2d Cir. 1947). As the court noted in *Gomez,* these plaintiffs

> ". . . seek sanctions for having been deprived of some of those few protections designed by Congress to lift them out of economic-sociologic peonage. Such fundamental human, highly personalized rights are just the stuff from which § 1983 claims are to be made."

See generally, Reich, The New Property, 73 Yale L.J. 733 (1964).

There is no doubt that the defendant, in allegedly enforcing regulations that are more restrictive than federal law permits, has acted "under color of state law." The plaintiffs having stated a claim cognizable under 42 U.S.C. § 1983, this Court has jurisdiction under 28 U.S.C. § 1343(4). A narrower approach to the scope of federal civil rights jurisdiction might leave certain individuals without a federal forum in which to seek redress when, under color of state law, they are deprived of rights aimed at securing basic human needs which the Congress, in its wisdom, has seen fit to protect. Such a result is unacceptable.

The plaintiffs now move for summary judgment under Rule 56, Fed.R.Civ.P. The defendant has filed no opposing affidavit or written response to the motion. The matter was called for hearing on January 24, 1974. The arguments of counsel at said time in no way changed the posture of the case for disposition by way of summary judgment.

### *Class Action*

Plaintiffs initially move under Rule 23(c)(1), Fed.R.Civ.P. to certify this action as a class action on behalf of the plaintiffs and all persons similarly situated, namely all other persons who participate in the Food Stamp Program in Rhode Island. Plaintiffs allege that the policies and practices of the defendant challenged in the action are equally applicable to all Rhode Island participants in the Food Stamp Program.

■ I find that the plaintiffs have sufficiently met the prerequisites for the certification of a class action as enumerated in Rule 23(a), Fed.R.Civ.P. The members of the affected class, numbering 69,806 as of June 1972, are so numerous as to make joinder of each of them impracticable. The questions of law and fact are common to the class, and the claims of the representative parties are typical of those which could be raised by any member of the class. There do not appear to be any interests of the named plaintiffs adverse to those they seek to represent, and it appears that the named plaintiffs, represented by counsel experienced in welfare litigation, will fairly and adequately protect the interests of the class.

■ Furthermore, plaintiffs' allegations make this case appropriate for certification as a class action under Rule 23(b)(2), since defendant has allegedly acted or failed to act on grounds generally applicable to the entire class of Rhode Island participants in the Food Stamp Program.

This matter is hereby certified as a class action under Rule 23(b)(2), and as such, notice to the members of the class is not necessary. *See* Yaffe v. Powers, 454 F.2d 1362, 1366 (1st Cir. 1972).

## VARIABLE PURCHASE REQUIREMENT

Rhode Island has chosen to participate in the Federal Food Stamp Program (7 U.S.C. Sec. 2011 et seq.) which was passed by Congress to relieve conditions of malnutrition, undernutrition and hunger throughout the country. It affords impoverished households an opportunity to purchase food stamps in small monetary denominations at a fraction of their face value, which can then be used to purchase food at retail grocery stores certified by the United States Department of Agriculture.

The program is regulated by the Secretary of Agriculture (7 U.S.C. Sec. 2013(c); 7 C.F.R. 270 et seq.) who issues instructions setting forth the policies and procedures to be followed. (FNS (FS) Instructions 732–1 et seq.). These instructions and regulations unless otherwise stated are mandatory.

The mechanics for the implementation of the program are that once or twice a month the household receives an "ATP" card (Authorization to Purchase) permitting the purchase of its allotment of food stamps according to the size of the household. The cost is an inverse function of the household income with the difference between the actual cost and the face value of the stamps being underwritten by the federal government as a "bonus amount".

Section 7(b) of the Act (7 U.S.C. sec. 2016(b)) and the Secretary's instructions and regulations (7 C.F.R. sec. 271.-1(s)(1)(V); and 271.6(d)(3)) require that after May 31, 1972 any eligible household be given a variable purchase option at the times during the month when the coupons are issued. This means nothing more than an opportunity to buy less than the full amount allotted to that household at that time of issuance. Specifically the plan gives the option to receive at the time of issuance a coupon allotment having a value of all, three quarters, one half, or one quarter of the monthly coupon allotment.

In spite of the mandate of the Act and the regulations the defendant enigmatically admits it has not and does not now permit variable purchases. No defense whatsoever is offered to justify this stand.

The variable purchase requirement is no capricious benevolence of the Secretary. It is founded on the hard reality of inconstancy in the purchasing ability of low income families where emergencies and poor planning all too often make quite impossible the accumulation of money for specific purchases on dates certain.

The uncontroverted affidavit of the plaintiff clearly demonstrates that the defendant is not making every "practica-

ble effort" [5] in the administration of the state program so as to afford the plaintiff and the class every opportunity to participate.

She states as follows:

"My present income is $89. per month from Social Security and $34. twice monthly from Aid to the Disabled.

Because my income is so low, I have found it difficult on a number of occasions since May 31, 1972, to purchase my full allotment of Food Stamps and also meet my other monthly expenses. Because I need Food Stamps to maintain an adequate diet, I have on a number of occasions been forced to delay or forego the purchase of other necessary items. On these occasions, I would have purchased less than my full allotment of Food Stamps if I had been allowed to do so under the variable purchase requirement." (Affidavit in support of Summary Judgment motion).

This is a class action and the court can take judicial notice of the number of people who participate in the Food Stamp Program in Rhode Island. Rodriguez v. Swank, 318 F.Supp. 289, 293–294 (N.D.Ill.1970), affd. mem. 403 U.S. 901, 91 S.Ct. 2202, 29 L.Ed.2d 677 (1971) and as the plaintiff has pointed out 69,806 people in Rhode Island received Food Stamps in June 1972. Food Stamp Program Statistical Summary of Program Operation, June 1972, U.S.D.A. Food and Nutrition Service.

Certainly within this group there is an unknown number of "Gigueres" depending on their Social Security, pensions, or retirement plans plus supplemental payments from public assistance.

It is a fact of life the exigencies of living in the ambiance of frugality is a never ending series of economic crises; and demands of a program devoted in part to the interest of the poor, a realistic plasticity in its administration if it is to fulfill its mission of eradicating hunger and malnutrition.

Since the defendant is required to implement the variable purchase requirement by both the Food Stamp Act, 7 U.S.C. sec. 2016(b) and the U.S.D.A. regulations promulgated pursuant thereto, 7 C.F.R. 271.6(D)(3) and 271.1(s)(1)(V), has admitted it has not done so and has offered no defense whatsoever for this failure the plaintiffs' motion for summary judgment as to Count 1 is hereby granted.

*Restricted Issuance of ATP Cards and Emergency Issuance Provisions*

Here again the facts are undisputed because of the defendant's admissions, namely;

a) it is the policy in Rhode Island to restrict the purchase of Food Stamps to the date of the issuance of the "ATP" card and four business days thereafter,

b) unless stamps are purchased within this time frame the "ATP" card becomes invalid and the right is lost thereafter,

c) this policy makes no allowance for delays in the receipt of the "ATP" cards or any other inability by the household to purchase within the five day period.

The U.S.D.A. Instructions, FNS (FS) Instruction 734–2(VI)(C), promulgated on September 22, 1969, states that the administering state agency:

"In emergency cases (newly certified households in immediate need, loss or theft of ATPs etc.) immediately prepare those ATPs which the household will need in order to participate *before* the next regular preparation of ATPs." (emphasis added)[6]

5. 7 U.S.C. § 2019(a) provides, in pertinent part:

"All practicable efforts shall be made in the administration of the food stamp program to insure that participants use their increased food purchasing power to obtain those staple foods most needed in their diets . . . ."

6. It appears that plaintiff Giguere's situation in which her "ATP" card was lost in the mail, is precisely the type of emergency situation contemplated by this instruction.

Thus it is the plaintiffs' contention found in Count III of the complaint, with which the Court agrees, that the restrictive and inflexible purchase and issuance policy of the defendant is in direct contravention of the Instructions prepared by the U.S.D.A. for the administration of the Food Stamp Program, at least insofar as the five day issuance period bars households facing an "emergency" situation from obtaining valid "ATP" cards before the next regular issuance period. Such an inflexible policy runs contra to the Congressional declaration, *supra* nn. 2, 5.

The Congressional intent, buttressed by the U.S.D.A. Instructions relative to emergency issuance indicate that eligible households should be given every practicable opportunity to participate in the program. Inexorable adherence to time schedules only thwarts the laudable purpose of the Food Stamp Program by making it difficult if not impossible for the plaintiff and the class to participate on a regular basis. The end harmful result of the defendant's unexplained inflexible policy is manifest in Mrs. Giguere's experience. She states in her affidavit:

> "On or about July 1, 1973 my ATP card failed to arrive because of incorrect address. By the time I finally got the card, the five day issuance period has (sic) elapsed and the card was invalid.
>
> On or about July 9, 1973, I contacted the Providence Office of the Department of Social and Rehabilitative Services and sought to receive a new card so I could purchase my Food Stamps. My request was denied because the issuance period had passed and the new card would have been useless. As a result of this action, I went without Food Stamps during the period July 1, 1973 to July 15, 1973." (Affidavit filed in support of the Summary Judgment motion).

The defendant's utter disregard for the emergency issuance of valid "ATP" cards, as mandated by Congressional policy and the U.S.D.A. Instructions compels the granting of summary judgment as to Count III. It is so ordered.

Count II of the Complaint alleges that the five day purchase restriction is generally invalid and that eligible households should be permitted to purchase food stamps at any time during the entire issuance period; regardless of whether the household falls within the "emergency" provisions of FNS (FS) 734–2(VI)(C) or not. The plaintiffs argue that the five day issuance restriction is in violation of Congressional intent found in the Food Stamp Act, particularly 7 U.S.C. §§ 2011, 2013(a), 2016(b) and 2019(a).

From the aforesaid policy declarations found in the Act, I find that it was the intent of Congress to provide eligible households with every practicable opportunity to participate in the Food Stamp Program. The defendant has failed to come forward with any persuasive argument why the validity of ATP cards should be limited to a period of five business days. In light of this failure, and the Congressional intent behind the Program, I feel compelled to grant plaintiffs' motion for Summary Judgment as to Count II. I only hold that a five day validity period is unduly restrictive in the factual context of the record. Conceivably state wide distribution through local centers, so as to cover the more remote sections of the state, is required. It would be violative of the Congressional intent to impose hardship on ATP holders to travel to a far removed central distribution point. Of course, the orderly administration of such a local distribution program may require some time limitations. Thus I leave it to the defendant to devise a distribution plan in keeping with this opinion.

The plaintiffs will prepare an order reflecting all the various rulings in this opinion.