Jeanette **SILVA** et al.

v.

**EAST PROVIDENCE HOUSING AUTHORITY** et al.

**Civ. A. No. 5383.**

United States District Court, D. Rhode Island.

Feb. 11, 1975.

---

John M. Roney and Frederick G. Cass of Rhode Island Legal Services, Providence, R. I., for plaintiffs.

Bradley L. Steere, Providence, R. I., for defendant East Providence Housing Authority.

Donald A. McDonald, Joseph T. Little, East Providence, R. I., for defendant City of East Providence, R. I.

Constance L. Messore, Asst. U. S. Atty. (R. I.), Providence, R. I., for defendants Secretary of Health, Education and Welfare (U. S.) and United States Housing Authority.

### MEMORANDUM AND ORDER

PETTINE, Chief Judge.

This matter is before the Court to consider the plaintiffs' motion to preliminarily enjoin the "federal" defendants herein, James Lynn (Secretary of H.U. D.), the Department of Housing and Urban Development (H.U.D.) and the United States Housing Authority (U.S. H.A.) from dissipating federal moneys originally allocated to fund a housing project, R.I. 7–6, to be constructed in the city of East Providence, until such time as the Court rules on the merits of this action. A hearing was held on November 25, 1974, and a stipulation of facts was submitted on December 20, 1974.

## FACTS

In April, 1974, the federal defendants first notified the "city" defendants herein, the East Providence Housing Authority (E.P.H.A.), its Commissioners, and the city of East Providence (sometimes hereinafter referred to as "the City"), that the Annual Contributions Contract ("A.C.C.") entered into by HUD and the EPHA for the construction of 100 units of low-income housing in the City under "R.I. 7–6" was being terminated prior to completion on the grounds of a "substantial breach" by the EPHA. Only thirty units had been constructed.

"[A]s a consequence of that termination, contract authority reserved to the use of the East Providence Housing Authority for the planning, development, construction, and operation of 70 duplex houses for low-income families designated Project R.I. 7–6 returned to an undifferentiated statutory contract authorization from which contract authority is allocated to approved public housing projects pursuant to contractual obligations undertaken by HUD.

\* \* \* \* \* \*

[S]aid statutory contract authorization becomes obligated to various new and ongoing public housing projects and is periodically depleted."

Stipulation of Facts, Pars. 2, 3.

Plaintiffs in this action are the class of all East Providence families with children whose low income makes them eligible for the housing to be constructed under R.I. 7–6. 42 U.S.C. § 1401 et seq.; R.I.Gen.L. § 45–25–1 et seq. As a result of the "ACC" termination, only 30 out of a planned 100 units of low-income housing were made available to them by R.I. 7–6. According to the testimony of John P. McGrath, of the HUD Regional Office in Boston, Massachusetts, pursuant to the 1974 amendments to the National Housing Act, 42 U.S.C. § 1401 et seq., no new housing of the type contemplated by R.I. 7–6 can be authorized. Further, although the City can apply to HUD for funds for new housing, East Providence would gain no priority over any other areas applying despite the fact that the federal money already authorized for seventy units of low-income housing in East Providence was never spent.[1] Thus, it cannot be said that the low-income housing contemplated by R.I. 7–6 will be provided under some other program.

## JURISDICTION

■ The Court's jurisdiction to hear this action was first questioned by the city defendants and decided on April 11, 1974, when the action was certified as a class. Without determining whether the plaintiffs had met the jurisdictional requirements of 28 U.S.C. § 1331(a), this Court held that it had jurisdiction to hear the action under 28 U.S.C. §§ 1343 and 1337, citing *inter alia,* Giguerre v. Affleck, 370 F.Supp. 154 (D.R.I.1974). Silva v. East Providence Housing Authority, C.A.No. 5383 (unreported, 4/11/74), slip op. at 8. Although this Court's ruling in *Giguerre* as to § 1343 jurisdiction must be viewed as overruled by the First Circuit opinion in Randall v. Goldmark, 495 F.2d 356 (1974), the conclusion in *Giguerre* that 28 U.S.C. § 1337 conferred jurisdiction is equally applicable here to both the city and federal defendants.

■■ Second, the focus of plaintiffs' original challenge, and the cause of the "ACC" termination by the federal defendants, was the city defendants' failure to proceed with R.I. 7–6 as agreed. Plaintiffs claimed that the city defendants intentionally stalled site-location and construction of units designed for low-income families while proceeding with R.I. 7–6's sister project to provide

---

1. Furthermore, according to Mr. McGrath, the prior history of the local Housing Authority is one of the criteria for determining project selection. HUD's belief that EPHA substantially breached the "ACC" for R.I. 7–6 could hardly inure to EPHA's benefit in any subsequent applications for HUD funds.

public housing for the elderly. Plaintiffs claim that this practice denied them the equal protection of the laws as guaranteed by the Fourteenth Amendment. Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). While recent decisions in such cases as Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972), and Acevedo v. Nassau County, New York, 500 F.2d 1078, 1081 (2d Cir. 1974), suggest that the plaintiffs have an uphill battle as to their constitutional claim, the very fact that the Court in *Jefferson* seriously treated the equal protection claims raised therein could hardly support the assertion that plaintiffs' constitutional claim here is "entirely frivolous". *But see Acevedo, supra* at 1081–1082. As a result, the constitutional claim is properly brought under 42 U.S.C. § 1983 and jurisdiction over it is conferred on the Court pursuant to 28 U.S.C. § 1343. Moreover, this Court can and does exercise pendent jurisdiction over all other causes of action raised in the amended complaint for which no independent basis of jurisdiction exists. Randall v. Goldmark, *supra.*

■ Lastly, the Court concludes that plaintiffs have made sufficient allegations to confer § 1331(a) jurisdiction on the Court. Plaintiffs' good faith allegation that the amount in controversy exceeds the $10,000 jurisdictional requirement cannot be ignored since it does not appear to a legal certainty that their claim is invalid. Murray v. Vaughn, 300 F.Supp. 688, 694 (D.R.I.1969). This is not a case in which plaintiffs impermissibly attempt to aggregate the amount of damages suffered by each to reach the $10,000 minimum. *See* Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). To the contrary, the sole, indivisible matter in controversy, as to each and every plaintiff and defendant, is whether or not a multimillion dollar housing project will be completed. Indeed, the only issue to be decided today is whether principles of equity require an order that the federal defendants set aside the moneys originally authorized for R.I. 7–6 until the merits have been finally adjudicated. Assuming standing, the matter and amount in controversy, to wit, the cost of completing R.I. 7–6, would be the same whether the action was brought by one individual, a group, or one of the parties to the contract. *See* Ronzio v. Denver & Rio Grande Co., 116 F.2d 604 (10th Cir. 1940). *Cf.* Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). *See generally* Hart & Wechsler, The Federal Courts and the Federal System, 1156–1170 (2d ed. 1973). *But see* 1 Moore, Federal Practice, paragraph 0.91[1] (2d ed. 1974).

## STANDING

■ Plaintiffs' action against the federal defendants is based on alleged violations of the National Housing Act, (NHA), 42 U.S.C. § 1401 et seq. and the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 et seq. As a class, plaintiffs comprise all those persons who would be eligible to reside in the low-income housing which was to have been constructed under R.I. 7–6. The very fact that R.I. 7–6, and its companion project R.I. 7–5, were approved by HUD demonstrates that, at the time of approval, there existed a need for standard housing for low-income families in East Providence. No evidence was presented to show that this need has since been fulfilled despite the curtailing of R.I. 7–6 and, of course, plaintiffs argue strenuously to the contrary. I find that plaintiffs, who among them comprise all the families who would have resided in and benefitted from the low-cost, safe and sanitary new housing to be provided under R.I. 7–6, have suffered "injury in fact" by its termination. *See* Holmes v. New York City Housing Authority, 398 F.2d 262 (2d Cir. 1968); Gautreaux v. Chicago Housing Authority, 265 F.Supp. 582 (N.D. Ill.1967), aff'd, 436 F.2d 306 (7th Cir. 1970), cert. denied 402 U.S. 922, 91 S.Ct. 1378, 28 L.Ed.2d 661.

I further conclude that plaintiffs, who represent all those eligible for the housing to have been constructed pursuant to the NHA and contracts executed thereunder, are "within the zone of interests" protected by the Act which contains within its declaration of purpose the following words:

> "It is declared to be the policy of the United States to promote the general welfare of the Nation by employing its funds and credit, as provided in this chapter, . . . to remedy the unsafe and insanitary housing conditions and the acute shortage of decent, safe and sanitary housing dwellings for families of low income . . . that are injurious to the health, safety and morals of the citizens of the Nation." 42 U.S.C. § 1401.

They are therefore proper parties to challenge alleged violations of its terms by the federal, as well as the city, defendants. Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970).[2]

I likewise conclude that plaintiffs, whose physical surroundings and health could only be improved by the availability of affordable, sanitary housing, are "arguably within the zone of interests" protected by the National Environmental Policy Act. Rhode Island Committee on Energy v. General Services Administration, C.A. # 74–272 (D.R.I. 12/11/74); Save Our Sound Fisheries Association v. Callaway, 387 F.Supp. 292 (D.R.I.1974). Cf. La Raza Unida v. Volpe, 337 F.Supp. 221, 232 (N.D.Cal.1971).

## INJUNCTIVE RELIEF

 As this Court has frequently noted, the four primary factors to be considered on a motion for a temporary restraining order or preliminary injunction are probability of irreparable harm, probability of success on the merits, a balancing of the parties' interests, and preservation of the status quo. See National Prisoners Reform Association v. Sharkey, 347 F.Supp. 1234 (D.R.I. 1972); McClellan v. University Heights, Inc., 338 F.Supp. 374 (D.R.I.1972); Palmigiano v. Travisono, 317 F.Supp. 776 (D.R.I.1970).

 The sole issue before the Court at this time concerns the federal moneys originally allocated to fund Project R.I. 7–6. The plaintiffs assert, and the federal defendants concede, that if the Court fails to restrain the federal defendants from spending those funds on other HUD projects, the statutory authorization pool to which these moneys were returned may be depleted by the time the Court rules on the merits of the underlying action. Stipulation of Facts Par. 2, 3. If such were to occur and plaintiffs ultimately prevailed on the merits, their's would be a Pyrrhic victory indeed. Since plaintiffs' entire cause of action would be jeopardized by the denial of the injunctive relief requested herein, the probability of their irreparable harm is beyond question.

Similarly, plaintiffs seek no more than to preserve the status quo by ensuring that moneys once specifically set aside by the federal defendants for R.I. 7–6 are not depleted before the merits of this action can be determined. And, on balance, the probable injury to the plaintiffs outweighs that to the federal defendants, whose multimillion dollar statutory contract authorization pool will be temporarily diminished by the cost of only one project, and one which the federal defendants had designed and

2. See Yarborough v. City of Warren, 383 F. Supp. 676, 681–682 (E.D.Mich.1974); Davis v. City of Toledo, 54 F.R.D. 386 (N.D.Ohio 1970); Cole v. Housing Authority of City of Newport, 312 F.Supp. 692 (D.R.I.1970), aff'd, 435 F.2d 807 (1st Cir. 1970). Cf. James v. Valtierra, 402 U.S. 137, 91 S.Ct. 1331, 28 L.Ed.2d 678 (1971); Thorpe v. Housing Authority of Durham, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); Mahaley v. Cuyahoga Metropolitan Housing Authority, 500 F.2d 1087 (6th Cir. 1974), cert. denied, 419 U.S. 1108, 95 S.Ct. 781, 42 L.Ed. 2d 805 (1975).; Lawrence v. Oakes, 361 F. Supp. 432 (D.Vt.1973).

approved in the first place. Moreover, those funds to construct housing will not be lost, but merely temporarily set aside until the merits of plaintiffs' cause are decided. At that time, no matter who prevails, the funds will be applied to construct HUD-approved housing.

As to the fourth factor, probability of success on the merits, this Court has consistently held:

"[T]he better-reasoned view, however, is that the likelihood of success on the merits should be a minor factor, especially where the potential injury is great. As the court held in G.B.C., Inc. v. United States, 302 F.Supp. 1283 at 1284 (E.D.Tenn.1969):

'* * * if the balance of hardships tips decidedly toward the plaintiff, it is ordinarily sufficient that the plaintiff has raised questions going to the merits which are so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus, for more deliberate investigation.'"

Palmigiano v. Travisono, *supra* at 787.

The plaintiffs have clearly satisfied this test.

## ORDER

It is therefore ordered that the defendants James Lynn, in his capacity of Secretary of HUD, and the Department of Housing and Urban Development, are enjoined from:

1. Returning to an undifferentiated statutory contract authorization pool all federal moneys originally allocated to fund the housing project known as Project R.I. 7–6, except to such extent as the moneys have already been expended in connection with R.I. 7–6;

2. Otherwise allowing by action or inaction, all federal moneys originally allocated to fund Project R.I. 7–6 to be depleted, except to such extent as the moneys have already been expended in connection with R.I. 7–6.

Said order shall remain in effect until such time as the Court rules on the merits of this action.