Katherine AMEN et al.,
Plaintiffs-Appellees,

v.

CITY OF DEARBORN, a Municipal Corp., et al., Defendants-Appellants.

No. 74–1650.

United States Court of Appeals,
Sixth Circuit.

Argued April 17, 1975.

Decided March 24, 1976.

Joseph Burtell, Carl P. Garlow, Lawrence B. DiBasio, Dearborn, Mich., James E. Tobin, Miller, Canfield, Paddock & Stone, Detroit, Mich., for defendants-appellants.

Michael J. Barnhart, Center for Urban Law & Housing, Detroit, Mich., Sam Tsoutsanis, Marilyn Mosier, Abdeen M. Jabara, Detroit, Mich., Elizabeth Alexander, Madison, Wis., for plaintiffs-appellees.

Before PECK, McCREE and ENGEL, Circuit Judges.

JOHN W. PECK, Circuit Judge.

Plaintiffs-appellees filed the instant complaint in district court claiming that their

properties, in an urban renewal area, had been "taken" without just compensation. Named defendants were the City of Dearborn, its mayor and city council, its plan commission and planner, its building and safety division and its superintendent, its community development department and its director, its licenses, weights and measures department and its director, its sanitation department and its director, its housing department and its director, and the city school board.[1] By pretrial memorandum opinion and order, the district court certified plaintiffs as representing six subclasses. After more than nineteen trial days which produced more than 2,600 pages in transcript, the district court found jurisdiction through 28 U.S.C. §§ 1331, 1343(3) (1970), reaffirmed its class action order, found that certain defendants' activities combined to "take" certain plaintiffs' properties without due process,[2] and, choosing to exercise its pendent jurisdiction, found that the City had violated the state relocation assistance for displaced persons act, M.S.A. § 8.215(61) et seq., and the state rehabilitation of blighted areas act, M.S.A. § 5.3501 et seq., as incorporated in a city ordinance. By the same opinion and a later judgment, the district court granted far-reaching relief against certain city officials, the city council, and the city plan commission, and their successors, collectively referred to in the opinion and judgment as "the City." The judgment required, inter alia, the City to divest itself of properties it had acquired[3] and to pay those plaintiffs who had sold their properties "the difference between the price paid by the City and the price later determined to be the fair market value of the property at the time of the taking of the property."

On this appeal, the district court's finding of jurisdiction is challenged as are its findings of an unconstitutional "taking" and of state law violations, and its remedy. We find it necessary to discuss only the challenge to jurisdiction.

For jurisdictional purposes, there are two classes of defendants, (1) the "City defendants" consisting of the City, its council, its plan commission, its building and safety division, and four of its departments,[4] and (2) the "individual defendants" consisting of the mayor, the city planner, the building and safety superintendent, and directors of four city departments. Similarly, plaintiffs invoked, and the district court found, two jurisdictional bases, the general federal question jurisdictional statute 28 U.S.C § 1331, and the civil rights jurisdictional statute 28 U.S.C § 1343(3).

---

1. The district court found that the school district, "an entity entirely separate and distinct from the City of Dearborn," "ha[d] not violated any of the plaintiffs' rights," and dismissed the school board. Plaintiffs have not appealed that dismissal, and consequently the school board is not a party on appeal.

2. "Although none of the activities of the City standing alone may have constituted a taking of plaintiffs' property, this court finds that the combination of the City's announcement and attendant publicity of the clearance projects, the City's refusal to issue certain repair and building permits coupled with its efforts to discourage repairs, the lack of care of City-owned property, the posting of signs on vacant buildings which invited vandalism, the posting of large signs in the area offering to buy property, the solicitation of sales to the City, the City's lack of initiative to control pollution in the South End, and the gradual acquisition of properties in both areas resulted in the taking of property in these areas for which homeowners are entitled to just compensation." 363 F.Supp. at 1277–1278.

3. The judgment specifies that improved lots were to be offered for sale at the City's acquisition cost "lowered or raised in proportion to the deterioration or improvement to the property since acquisition . . . [and] may be adjusted upward at the rate of Five (5%) Percent per year since acquisition," vacant lots at $500 per 30-foot-wide lot or "the median price paid by the City for vacant lots in the affected area in the last five (5) years." For each six months the properties remain unsold, the judgment specifies that the price should be reduced twenty percent (20%), unless "at the end of any six (6) month period . . . sold to the highest bidder at public auction."

4. No relief was granted against the building and safety division and the four departments, as such, and they have not appealed. Consequently, except for footnote 8, infra, they will not be referred to hereinafter.

*I. Jurisdiction As To The Parties*

■ *Service of Process.* Axiomatically, due process requires proper service of process in order to obtain *in personam* jurisdiction over either the "City defendants" or the "individual defendants." See, e. g., *Jaynes v. Jaynes*, 496 F.2d 9 (2d Cir. 1974); *Backo v. Local 281, United Brotherhood of Carpenters and Joiners*, 438 F.2d 176, 180 (2d Cir. 1970), *cert. denied*, 404 U.S. 858, 92 S.Ct. 110, 30 L.Ed.2d 99 (1971); *Beecher v. Wallace*, 381 F.2d 372 (9th Cir. 1967); *Surowitz v. New York City Employees' Retirement System*, 376 F.Supp. 369, 372 (S.D.N.Y.1974).

Fed.R.Civ.P. 4(d) governs the service of process, providing, in part, that service may be made,

"(1) Upon an individual . . . by delivering a copy of the summons and of the complaint to him personally or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process. . .

"(6) Upon a state or municipal corporation or other governmental organization thereof subject to suit, by delivering a copy of the summons and of the complaint to the chief executive officer thereof or by serving the summons and complaint in the manner prescribed by law of that state for the service of summons or other like process upon any such defendant.

"(7) Upon a defendant of any class referred to in paragraph (1) . . . , it is also sufficient if the summons and complaint are served in the manner pre-scribed by any statute of the United States or in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state."

Thus, Rules 4(d)(1) and 4(d)(7) govern the service on the "individual defendants," Rule 4(d)(6) the service on the "City defendants."

■ Rather than reflecting service on the "individual defendants" in compliance with either 4(d)(1) or 4(d)(7) by personal service, "residence" service, agent service, or service in compliance with Michigan law, the marshall's return reflects only that the summons and complaint were served on the secretary to the city clerk and on the city director of elections. Though the amended complaint fails to reflect whether the individuals were sued in their official or their individual capacities, even if they were sued in their official capacities, proper service of process would still be necessary to obtain personal jurisdiction over those officials. *Gozdanovic v. Civil Serv. Comm'n*, 361 F.Supp. 504 (W.D.Pa.1973); *Bell v. Hosse*, 31 F.R.D. 181, 184 (M.D.Tenn.1962). As in *Hosse*, nothing in the record indicates that either the secretary to the clerk or the director of elections was authorized as the individuals' agent for service of process.

■ The district court also could have acquired jurisdiction over the individual defendants had they voluntarily appeared, but the record, rather than reflecting such a voluntary appearance, reflects that the attorneys for the City, in their answers to plaintiffs' complaint and amended complaint, carefully limited their answer to "defendant City of Dearborn, only." [5]

---

5. Even the district court "note[d] that the individual defendants, including the mayor, have never answered the Complaint in this matter and are technically in default. Answers have been filed on behalf of the School Board and the City alone. Nonetheless, the City Attorney for Dearborn has proceeded as though he represented all individual defendants and we will treat them as such even though he has never filed an appearance in this matter." 363 F.Supp. at 1271. *Gay Students Organization v. Bonner*, 509 F.2d 652, 656–57 (1st Cir. 1974), though sustaining *in personam* jurisdiction over unserved and untimely served trustees "in their official capacities," is distinguishable in that the unserved and untimely served trustees "had authorized their common attorney to prosecute concurrent litigation on the same matter in the state court and had knowledge of the [federal] suit being brought against them."

■ Service of process was, however, sufficient to permit the judgment to run against the City and the city council. Admittedly, no "chief executive officer[s]" of those organizations were served. Fed.R. Civ.P. 4(d)(6). Compare *Mathias v. City of Milwaukee Dep't of City Development*, 377 F.Supp. 497, 499 (E.D.Wis.1974) (service on department commissioner sufficient) with *Mendoza v. City of Miami*, 483 F.2d 430 (5th Cir. 1973) (service on wives of chief executive officers insufficient) and *United States Steel Corp. v. Multistate Tax Comm'n*, 367 F.Supp. 107, 118 (S.D.N.Y.1973) (service on commission tax auditor insufficient). But Fed.R.Civ.P. 4(d)(6) also authorizes a government organization to be served "in the manner prescribed by law of that state . . . upon any such defendant." Mich. Comp.Laws Ann. § 600.1925 (1968), and its corollary court rule, Mich.Gen.Court Rule 105.6 (1973), provide that

"[s]ervice of process on public, municipal, quasi-municipal, or governmental corporations, unincorporated boards, or public bodies, may be made by leaving a summons and a copy of the complaint with

. . .

"(2) the mayor, city clerk, or city attorney, in the case of cities; . . .

"(8) the president, chairman, secretary, manager or clerk, in the case of any other public body organized or existing under the constitution or any law of this state, when by statute no other method of service is specially provided.

"The service of process may be made on any officer having substantially the same duties as those named or described irrespective of their titles. In any case, service may be made by leaving a summons and a copy of the complaint with a person in charge of the office of any of the above-described officers upon whom service may be made . . . ."

The parties have cited us to, and we have found, nothing in the instant record indicating that the appearing attorneys were authorized to appear for the individual defendants.

6. The attempted service on the elections director, he being neither "the mayor, city clerk, [n]or city attorney," was ineffectual. See

Service on the clerk's office [6] surely was sufficient service on the City through Mich. Comp.Laws Ann. § 600.1925(2), as supplemented by the provision that "service may be made by leaving a summons . . . with a person in charge of the office of any of the above-described officers upon whom service may be made." [7] Though section 600.1925(2) refers to service "in the case of cities," and though none of the few reported Michigan cases construing section 600.-1925 have considered the applicability of 600.1925(2) to city councils or city plan commissions, we consider the service also sufficient on the city council, as such, as the City's legislative body.

■ Despite federal and Michigan courts' demand for compliance with Fed.R.Civ.P. 4(d)(6) and with Mich.Comp.Laws Ann. § 600.1925, see *Mendoza, supra, United States Steel, supra, Brooke v. Brooke*, 272 Mich. 627, 262 N.W. 426 (1935), service was arguably sufficient on the city plan commission. Thus, the district court may determine that the plan commission was properly present unless, on remand, it determines that the commission was to its prejudice unaware that it had been named as a party defendant in the litigation.

## II. Subject Matter Jurisdiction

*Introduction.* In addition to acquiring *in personam* jurisdiction over the parties, federal courts, being courts of limited jurisdiction, must have subject matter jurisdiction.

■ *Civil Rights jurisdiction over "city defendants."* The district court properly found that the defendant city could not be sued through section 1983, 42 U.S.C. § 1983 (1970), and its jurisdictional statute, 28 U.S.C. § 1343(3). *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Hanna v. Drobnick*, 514 F.2d 393

*Brooke v. Brooke*, 272 Mich. 627, 262 N.W. 426 (1935).

7. Even if service on the city were insufficient, the city, by answering without raising the insufficiency of service of process, waived that defense. Fed.R.Civ.P. 12(h)(1).

(6th Cir. 1975); *Bosely v. City of Euclid*, 496 F.2d 193, 195 (6th Cir. 1974). Nor may the city council or plan commission be sued under section 1983 and through section 1343(3). See, e. g., *Garrett v. City of Hamtramck*, 503 F.2d 1236, 1249–50 (6th Cir. 1974) (city "planning commission"); *United Farmworkers of Florida Housing Project, Inc. v. City of Delray Beach*, 493 F.2d 799, 801 (5th Cir. 1974) (county area planning board); *Lehman v. City of Pittsburgh*, 474 F.2d 21 (3rd Cir. 1973) (city civil service commission); *Puckett v. Mobile City Comm'n*, 380 F.Supp. 593, 597 (S.D.Ala. 1974) (city commission).[8]

■ *Federal question jurisdiction over "city defendants."* Though municipalities, their councils and their planning commissions cannot be sued through section 1983, it is well established that municipalities, councils and commissions may be sued directly for fourteenth amendment violations through the general federal question jurisdictional statute, 28 U.S.C. § 1331. *Kenosha, supra*, 412 U.S. at 514, 93 S.Ct. at 2227, 37 L.Ed.2d at 116; *Drobnick, supra*, 514 F.2d at 398; *Bosely, supra*, 496 F.2d at 195.

■ Unlike section 1343(3), section 1331 requires that *each* class member asserting "separate and distinct claims" must satisfy the jurisdictional amount requirement. *Zahn v. International Paper Co.*, 414 U.S. 291, 302 n. 11, 94 S.Ct. 505, 512 n. 11, 38 L.Ed.2d 511, 519 n. 11 (1973); *Drobnick, supra*.

■ Plaintiffs claim that the *Zahn* rule against aggregation, however, applies only to Rule 23(b)(3) classes, as in *Zahn, supra*, 414 U.S. at 301, 94 S.Ct. at 512, 38 L.Ed.2d at 519, rather than to Rule 23(b)(1)(B) and 23(b)(2) classes, as the district court below certified. We construe *Zahn*, however, to prohibit aggregation whenever the class members assert "separate and distinct"

claims, or demands, 414 U.S. at 295–302, 94 S.Ct. at 508–512, 38 L.Ed.2d at 516–519, irrespective of whether the district court certified the classes to be 23(b)(1), 23(b)(2), or 23(b)(3). See *Givens v. W. T. Grant Co.*, 457 F.2d 612, 614 n. 4 (2d Cir.), *vacated and remanded on other grounds*, 409 U.S. 56, 93 S.Ct. 451, 34 L.Ed.2d 266 (1972); *Brandt v. Owens-Illinois, Inc.*, 62 F.R.D. 160, 169 (S.D. N.Y.1974). But see *Garrett v. City of Hamtramck*, 394 F.Supp. 1151, 1155 (E.D.Mich. 1975).

■ Of course, "aggregation" is permissible where class members "unite to enforce a single title or right in which they have a common and undivided interest." *Gallagher v. Continental Ins. Co.*, 502 F.2d 827, 831 (10th Cir. 1974), quoting *Troy Bank v. G. A. Whitehead & Company*, 222 U.S. 39, 40–41, 32 S.Ct. 9, 10, 56 L.Ed. 81, 82–83 (1911). Accord, *Silva v. East Providence Housing Auth.*, 390 F.Supp. 691 (D.R.I.1975).

Consequently, whether plaintiffs asserted "separate and distinct" claims or "common and undivided interests" becomes all-important. Plaintiffs' amended complaint contains averments of "unlawful taking[s] of their propert[ies]," which are more similar to the averments of damage to individual property interests in *Zahn, supra*, pay raises in *National Treasury Employees Union v. Nixon*, 160 U.S.App.D.C. 321, 492 F.2d 587, 592 (1974), investment interests in *Beckerman v. Sands*, 384 F.Supp. 1296 (S.D.N.Y. 1974), and survivor annuity benefits in *Nixon v. Hampton*, 400 F.Supp. 881, 886–87 (E.D.Pa.1975), than to the "common and undivided interest" in the state treasury in *Gallagher, supra*, in a public housing project in *Silva, supra*, or in a certain environment in *Molokai Homesteaders Cooperative Ass'n v. Morton*, 506 F.2d 572 (9th Cir. 1974).

■ Plaintiffs' claim of a "right" to continue to live in their "unique," Arab Moslem

---

8. Nor could the city building and safety division or the city departments be sued through section 1983. See, e. g., *Monell v. Department of Social Serv.*, 394 F.Supp. 853, 855 (S.D.N.Y. 1975) (city department of social services); *Canty v. City of Richmond*, 383 F.Supp. 1396, 1400 (E.D.Va.1974) (city police department); *Mathias v. City of Milwaukee Dep't of City Develop-* ment, 377 F.Supp. 497 (E.D.Wis.1974) (city department of city development); *Waltenberg v. New York City Dep't of Corrections*, 376 F.Supp. 41, 44 (S.D.N.Y.1974) (city department of corrections); *White v. Flemming*, 374 F.Supp. 267, 269 (E.D.Wis.1974) (city police department).

majority, neighborhood, even if a "common and undivided interest," cannot aid them in meeting the jurisdictional amount required. Such right, clearly "incapable of monetary valuation," cannot support section 1331 jurisdiction. See *Goldsmith v. Sutherland*, 426 F.2d 1395, 1397 (6th Cir.), *cert. denied*, 400 U.S. 960, 91 S.Ct. 353, 27 L.Ed.2d 270 (1970); *McGaw v. Farrow*, 472 F.2d 952, 954–55 (4th Cir. 1973); *Network Project v. Corporation for Public Broadcasting*, 398 F.Supp. 1332, 1340–42 (D.D.C.1975). But see *Gomez v. Wilson*, 477 F.2d 411, 420–421 n. 56 (D.C.Cir. 1973); *Brown v. Board of Educ.*, 386 F.Supp. 110 (N.D.Ill.1974).

■■■ Even had plaintiffs alleged in good faith that each plaintiff class member had more than $10,000 in controversy,[9] the city's answer "denie[d] that any of the plaintiffs are able to satisfy the jurisdictional requirements of 28 U.S.C. § 1331." By denying the jurisdictional amount allegation, the city "put the [plaintiffs] to their proof as to the amount in controversy." *United Farmworkers, supra*, 493 F.2d at 802 n. 4. Accord, *Kenosha, supra*, 412 U.S. at 514, 93 S.Ct. at 2227, 37 L.Ed.2d at 116; *Gomez, supra*, 477 F.2d at 419–421; *Manos v. City of Green Bay*, 372 F.Supp. 40, 45 (E.D.Wis. 1974); *Beckerman, supra*, 384 F.Supp. at 1298.

Yet, in finding jurisdiction under section 1331, the district court apparently overlooked the City's answer, stating that,

> "The only challenge to jurisdiction by the defendants was made by the City in its Answer to the First Amended Complaint in which it said, 'Plaintiffs have failed to show that defendant, or its agents have acted under color of law.' . . . [W]e reject the only objection voiced by the defendants to this court's jurisdiction." 363 F.Supp. at 1270.

Plaintiffs' appellate brief claims that "[t]he district court found that Plaintiffs had made a good faith claim that the matter in controversy exceeded $10,000 for each plaintiff." Plaintiffs' Brief at 18. Plaintiffs' counsel, however, seriously misreads the district court's opinion, which merely recites that

> "plaintiffs hav[e] alleged that they have been damaged individually in an amount in excess of $10,000 and that their constitutional rights have been violated." 363 F.Supp. at 1270.

The district court merely, and probably incorrectly,[10] found that plaintiffs had alleged individual damages in excess of $10,000; the district court did not find that plaintiffs had "made good faith claims" in excess of $10,000 for each plaintiff. Had the district court found that more than $10,000 was "in controversy" between each plaintiff, or even certain plaintiffs, and the City, and had substantial evidence supported the finding, then the district court would have had jurisdiction over those plaintiffs' claims. But a conclusionary finding that plaintiffs each had more than $10,000 "in controversy" would have been insufficient since defendants denied the jurisdictional allegation and the record indicates that at least some plaintiff class members had less than $10,000 in controversy with the City. We follow *Patrician Towers Owners, Inc. v. Fairchild*, 513 F.2d 216, 219 (4th Cir. 1975), in remanding "in order that the District Court may make specific and detailed findings of jurisdiction . . ., with the right on the part of any of the parties to offer any additional testimony deemed relevant by the trial court . . . ." 513 F.2d at 221–22.

The judgment of the district court is reversed and the cause remanded for further proceedings consistent herewith.

---

**9.** The actual allegation, however, falls short of alleging that *each* class member had more than $10,000 in controversy. Rather, plaintiffs summarily alleged, "the amount in controversy, exclusive of interest and costs, is greater than Ten Thousand ($10,000.00) Dollars." See *Beckerman v. Sands*, 384 F.Supp. 1296, 1299 (S.D.N.Y.1974).

**10.** See footnote 9, *supra*.