**KNOXVILLE PROGRESSIVE CHRIST-
IAN COALITION et al.**

v.

**Honorable Kyle C. TESTERMAN,
Mayor, et al.**

**Civ. No. 3–75–213.**

United States District Court,
E. D. Tennessee, N. D.

Oct. 21, 1975.

Robert M. Stivers, Jr., Knoxville, Tenn., for plaintiffs.

Louis Hofferbert, Robert A. Finley, John L. Bowers, Jr., U. S. Atty., Kenneth W. Holbert, Knoxville, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This is an action to enjoin the Secretary of Housing and Urban Development from releasing certain community development funds to the City of Knoxville, Tennessee, pursuant to Title I of the Housing and Community Development Act of 1974, 42 U.S.C. §§ 5301–5317 (Supp.1975). Plaintiffs contend that

certain projects advanced by the City in its application for community development funds are ineligible under the Act and that the Secretary should be enjoined from releasing funds for these projects. Juridiction is asserted under 28 U.S.C. § 1331(a).

The case is before the Court on plaintiffs' motion for a temporary injunction and defendants' motions to dismiss or alternatively for summary judgment. The Court has heard oral argument on these motions. At the time of the hearing the Court informed the parties that it intended to treat the Secretary's motion as a motion for summary judgment as well as a motion to dismiss. Plaintiffs were given ten days to respond and have done so by filing two additional affidavits.

The parties to this action are as follows: plaintiffs (1) Knoxville Progressive Christian Coalition, comprised of a number of persons of low and moderate income living in blighted areas "and other groups interested in the betterment and welfare of such persons . . ."; (2) the 4th and Gill Neighborhood Committee, comprised of residents of a blighted area of the City which is scheduled to receive none of the community development funds in question; (3) Edgar Shelton, a taxpayer and homeowner in the City; (4) Virginia Foster, a low-income resident of the 4th and Gill neighborhood; and defendants (1) Carla Hills, Secretary of Housing and Urban Development; (2) the Department of Housing and Urban Development (HUD); (3) Honorable Kyle C. Testerman, Mayor of the City of Knoxville and applicant for the funds in question; and (4) the City of Knoxville, the prospective recipient of the funds.[1]

The basic facts which underlie this controversy are as follows: On April 11, 1975, Mayor Testerman, acting on behalf of the City of Knoxville, filed an application for community development funds with the area HUD office.[2] Pursuant to the provisions of the Community Development Act and regulations thereto, HUD reviewed the City's application. See 42 U.S.C. § 5304 (Supp. 1975); 24 C.F.R. § 570.306 (1975).[3] Several deficiencies were noted in the application, including the fact that the application contained an inadequate Housing Assistance Plan which failed to promote a greater choice of housing opportunities for lower income persons. The Housing Assistance Plan was modified and was subsequently approved by HUD.

The Knoxville Block Grant Application was conditionally approved by HUD on May 8, 1975. The approval was conditioned on completion of local environmental reviews and HUD's receipt of certain materials relating to proposed social service programs. The conditional approval reserved no further decisions relating to the eligibility of the projects. Attachment B to the Secretary's Motion to Dismiss at 3. Mayor Testerman executed a Grant Agreement on behalf of the City on June 13, 1975, in which the City "agree[d] to comply with all terms and conditions of the Agreement, applicable law, regulations and all requirements of HUD, now or hereinafter in effect, pertaining to the assistance provided." Exhibit 17 to the Secretary's Motion to Dismiss. A further certification was made pursuant to 42 U.S.C. § 5304(b)(2) that maximum feasible priority had been given to activities to benefit low- or moderate-in-

---

1. The Knoxville Community Development Corporation and the Metropolitan Planning Commission were originally named as defendants. The action against them was dismissed by agreement of the parties during the hearing on September 30, 1975.

2. The application in Exhibit 1 to the Complaint.

3. At the time Knoxville's application was reviewed by HUD the regulations appearing at 24 C.F.R. Part 570 were not published but substantially identical eligibility criteria had been published in the Federal Register. 39 F.R. 40136, Nov. 13, 1974.

come families or aid in the prevention or elimination of slums or blight.

In its Complaint the plaintiffs challenge the eligibility of the following projects and ask that release of funds for these projects be temporarily and permanently enjoined:

1. Acquisition and Renovation of the Bijou Theater.

2. Acquisition and clean up of the L & N Railroad Property.

3. Feasibility Study for the 1980 World's Fair.

Five other projects in the City's Application are termed "questionable" in the Complaint and plaintiffs seek a permanent injunction enjoining release of funds for these projects after a hearing on the merits. The funds which plaintiffs assert are designated for ineligible projects amount to $1,606,500.00. Plaintiffs do not question the eligibility of the other projects set out in application and which are to be funded with the balance of the $4,091,000.00 approved for Knoxville's community development program.

The Act provides that the Secretary "shall" approve an application for community development funds unless—

"(1) on the basis of significant facts and data, generally available and pertaining to community housing needs and objectives, the Secretary determines that the applicant's description of such needs and objectives is plainly inconsistent with such facts or data; or

"(2) on the basis of the application, the Secretary determines that the activities to be undertaken are plainly inappropriate to meeting the needs and objectives identified by the applicant pursuant to subsection (a) of this section; or

"(3) the Secretary determines that the application does not comply with the requirements of this title or other applicable law or proposes activities which are ineligible under this title." 42 U.S.C. § 5304(c).

Plaintiffs maintain that the following language in the City's application proposed three ineligible activities:

"As part of the lower Second Creek redevelopment activities, a firm redevelopment plan must be prepared which would also include *the preservation of the existing L & N Railroad terminal building.*" Exhibit 1 to the Complaint Page 25, Section C–2 (emphasis added)

\* \* \* \* \* \*

"To continue the planning and redevelopment process already begun in Knoxville's Center City by investigating the feasibility of historical preservation in the Jackson Avenue area, the removal of architectural barriers, *the investigation of the feasibility of restoring the Bijou Theater,* and the continuing of Center City planning activities *to include investigation of the feasibility of conducting a World's Fair in Knoxville.*" *Id.,* Section C–3 (emphasis added)

Reference to the "L & N and Southern Depots" is also made in Section A–8 of the application at page 16, which deals with historic preservation.

Plaintiffs' position is that the foregoing projects are ineligible activities under Section 5305 of the Act and 24 C.F.R. § 570.201. The regulations list the following as ineligible activities:

"(2) Stadiums, sports arenas, *auditoriums, concert halls, cultural and art centers, convention centers, museums, libraries, and similar facilities which . are used by the general public primarily as spectators or observers,* except cultural, art, museum, library, and similar facilities undertaken as part of a neighborhood facilities project;

\* \* \* \* \* \*

"(4) Airports, subways, trolley lines, *bus or other transit terminals, or stations, and other transportation facilities;*" 24 C.F.R. § 570.201(a) (2), (4) (emphasis added)

In support of her motion to dismiss the Secretary submitted the affidavit of C. G. Oakes, Area Director, Tennessee Area Office of HUD, and the affidavit of Albert N. Baer, a HUD official designated as "leadperson" for the Knoxville Block Grant Application. Attachments B and C to the Motion to Dismiss. Mr. Baer explained in his affidavit that the L & N Railroad property acquisition and Bijou Theater acquisition and renovation were eligible projects under 24 C.F.R. § 570.200(a)(1). This section provides as follows:

*"Eligible activities.*

"(a) Grant assistance for a community development program may be used only for the following activities:

"(1) Acquisition in whole or in part by purchase, lease, donation or otherwise, of real property (including air rights, water rights, and other interests therein), which is—

"(i) Blighted, deteriorated, deteriorating, undeveloped, or inappropriately developed from the standpoint of sound community development and growth, as determined by the recipient pursuant to State and local laws;

"(ii) Appropriate for rehabilitation or conservation activities;

"(iii) Appropriate for the preservation or restoration of historic sites, the beautification of urban land, the conservation of open spaces, natural resources, and scenic areas, the provision of recreational opportunities, or the guidance of urban development;

"(iv) To be used for the provision of public works, facilities, and improvements eligible for assistance under paragraph (a)(2) of this section; or

"(v) To be used for other public purposes, including the conversion of land to other uses where necessary or appropriate to the community development program."

He explained that certain information gathered under an eligible study could legally be used by a private group which may study the feasibility of a World's Fair. Mr. Baer also cited the pertinent regulations under which the five other projects which plaintiffs term "questionable" were approved.

Plaintiffs' primary contention, as we understand it, is that even if the Secretary approved the funds in question with the good faith intention that the money would be spent on eligible projects, there was no factual basis in the record before the Secretary on which a reasoned judgment could be based. Specifically, plaintiffs contend that there was no factual basis for determining that the Bijou Theater and L & N Depot are blighted and deteriorated areas. The Secretary's action in approving funds for purposes not sought in the application, so the argument continues, is arbitrary and unreasonable and subject to review.

### I. *Jurisdiction*

The Court has jurisdiction over this action under its general federal question jurisdiction. 28 U.S.C. § 1331(a). This case presents important questions arising under the laws of the United States and substantially more than $10,-000.00 exclusive of interest and cost is in controversy. *See St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *Garrett v. City of Hamtramck*, 394 F.Supp. 1151, 1154 (E.D.Mich.1975).

### II. *Standing—Ripeness*

Defendants contend that plaintiffs do not have the requisite standing to prosecute the action and the complaint should therefore be dismissed. The defendants rely heavily on the recent case of *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), in support of their contention.

■ We conclude at the outset that we should treat this action as one brought under the provisions of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq. See Citizens to Preserve*

*Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Shannon v. Department of Housing and Urban Development,* 436 F.2d 809 (3rd Cir. 1970); *Mount Sinai Hospital v. Weinberger,* 376 F.Supp. 1099, 1108–09 (S.D.Fla.1974). This determination does not answer the difficult question of standing, but it does help to bring into focus the requirements that plaintiffs must satisfy.

■ When challenging federal administrative action, the fundamental prerequisites for standing are as follows: (1) the challenged activity "has caused [plaintiff] injury in fact, economic or otherwise," and (2) the interest sought to be protected "is arguably within the zone of interests to be protected or regulated by the statute . . in question." *Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 152–53, 90 S.Ct. 827, 829–830, 25 L.Ed.2d 184 (1970); *See also United States v. SCRAP,* 412 U.S. 669, 687, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *Sierra Club v. Morton,* 405 U.S. 727, 733, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

A closely-related requirement is that review of the agency action must not have been precluded by Congress. There is no such explicit preclusion in the Community Development Act, and, the test therefore becomes whether nonreviewability can be fairly inferred from the statute or its legislative history. *Barlow v. Collins,* 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). Judicial review is the rule and nonreviewability is an exception. "[O]nly upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967).

■ We agree with defendants that Shelton lacks the requisite standing to prosecute this action. The only alleged nexus between his status as a taxpayer and this action is that he may face the prospect of payment of additional taxes if the funds in question here are spent on ineligible projects. This alleged interest in the action is too tenuous to satisfy the requirement that a plaintiff have a "personal stake in the outcome of the controversy" in order to warrant invocation of federal court jurisdiction. *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). Furthermore, Shelton's alleged interest in the controversy is in the nature of a generalized grievance which could be shared by a large segment of the population. Such grievances normally do not satisfy the standing requirement. *See Warth,* supra; *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 227–228, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974). Accordingly, Shelton must be dismissed from the action.

The standing question presented with regard to the remaining plaintiffs presents a far more difficult issue. Defendants contend that the plaintiffs have not demonstrated a threatened or actual injury to them that is causally related to the defendants' allegedly wrongful activities. In support of this, it is pointed out that even if the plainiffs were to prevail in this action, the funds involved might be used on eligible projects other than plaintiffs' neighborhoods. Thus, it is argued, plaintiffs have not shown that they would "personally benefit in a tangible way from the court's intervention." *Warth, supra,* 422 U.S. at 508, 95 S.Ct. at 2210.

■ If the Court were to accept this argument, it would be difficult to imagine *any* low- or middle-income plaintiff with standing to challenge alleged improper allocation of funds under the Community Development Act. We need not reach this question, however, since we view the question of ripeness as being a more compelling reason for deny-

ing review at this time.[4] The defendants did not raise the question of ripeness in their motion to dismiss, but the question is closely interwined with the question of standing. *Warth, supra* at 499, 95 S.Ct. at 2205 n. 10. The question of ripeness is essentially one of "whether the harm asserted has matured sufficiently to warrant judicial intervention . . ." *Id.* Although ripeness is not normally associated with what are sometimes termed "adjudicatory proceedings," the interests embodied in the doctrine are pertinent to the question of whether or not to grant nonstatutory review of administrative action. *Mount Sinai Hospital v. Weinberger, supra,* at 1115.

■ Broadly defined, the ripeness doctrine prevents the courts from entangling themselves in premature adjudication, and it protects agencies from judicial interference until the effects of an administrative decision have been felt in a concrete way by the challenging parties. "The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner, supra* 387 U.S. at 148–49, 87 S.Ct. at 1515.

The doctrine is also "founded on the practical wisdom of not coming prematurely or needlessly in conflict with the executive or legislature." *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 155, 71 S.Ct. 624, 640, 95 L.Ed. 817 (1951) (Frankfurter J., concurring) (citation omitted). *See also Mount Sinai Hospital v. Weinberger, supra,* at 1115–17.

■ The provisions of the Community Development Act reveal that it contemplates a continuing dialogue between local officials and the Secretary during the implementation of a locality's community development program. For example, the Act provides for post-grant reporting and audits. 42 U.S.C. § 5304 (d), (g). As discussed previously, local officials are required to certify that "maximum feasible priority" has been given to activities "which will benefit low- or moderate-income families or aid in the prevention or elimination of slums or blight." 42 U.S.C. § 5304(b)(2). Certification is also required that adequate citizen participation in the program has been sought. 42 U.S.C. § 5304(a)(6). Furthermore, the Act provides that the Secretary may reduce, terminate or even recover funds which are expended on ineligible projects. 42 U.S.C. § 5311.[5]

---

4. In the brief in support of their motion to dismiss, the local defendants suggest that private actions are precluded for enforcement of obligations under the Act because a public action is maintainable by the Attorney General pursuant to 42 U.S.C. § 5311. No authority is cited in support of this contention. See *National Railroad Passenger Corp. (Amtrak) v. National Assoc. of Railroad Passengers,* 414 U.S. 453, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974) ; *Davis v. Romney,* 490 F.2d 1360, 1369 (3d Cir. 1974).

5. This section provides in pertinent part:
"§ 5311. *Remedies for noncompliance*
"(a) If the Secretary finds after reasonable notice and opportunity for hearing that a recipient of assistance under this title has failed to comply substantially with any provision of this title, the Secretary, until he is satisfied that there is no longer any such failure to comply, shall—

"(1) terminate payments to the recipient under this title, or
"(2) reduce payments to the recipient under this title by an amount equal to the amount of such payments which were not expended in accordance with this title, or
"(3) limit the availability of payments under this title to programs, projects, or activities not affected by such failure to comply.
"(b)(1) In lieu of, or in addition to, any action authorized by subsection (a), the Secretary may, if he has reason to believe that a recipient has failed to comply substantially with any provision of this title, refer the matter to the Attorney General of the United States with a recommendation that an appropriate civil action be instituted.
"(2) Upon such a referral the Attorney General may bring a civil action in any United States district court having venue thereof for such relief as may be appropriate,

Congress has delineated the projects which are eligible under the Act and the Secretary has promulgated regulations which set forth specifically the eligible projects and which list examples of ineligible projects. 42 U.S.C. § 5305; 24 C.F.R. §§ 570.200, 570.201. The list of eligible projects is extensive and includes activities to eliminate blighting influences in urban areas as well as activities to provide low- and moderate-income housing.

. Presumably the Secretary will carry out her responsibilities under the Act to oversee the use of the funds in question and will insure that they are spent only on eligible projects.

Although the "record" upon which the Secretary based her decision is somewhat sparse, the reason for this is clear. Congress designed the Act so that there would be a minimum of "second-guessing" by Washington" or "front-end" review by the Secretary. H.Rpt. 93–1114, 93rd Cong., 2d.Sess., 2–3 (1974); S.Rep.No. 93–693, 93rd Cong., 2d.Sess., 48–49 (1974); 3 U.S.Code Cong. & Admin. News, pp. 4325–26 (1974). Assistance is to be provided on an annual basis, "with maximum certainty and minimum delay, upon which communities can rely in their planning." 42 U.S.C. § 5301(d) (1).

As discussed previously, the record shows that there was at least some dialogue between HUD officials and officials of the City during the period of time the application was under review. We are not aware of any requirement that all of the necessary information concerning particular projects must be furnished in the original application.

HUD's function was to review the entire community development program, and it appears that it did so in more than a perfunctory manner. Judicial intervention at this time would only serve to interrupt efficient operation of .

including an action to recover the amount of the assistance furnished under this title

the Act. In the unlikely event that either the local defendants or the Secretary fail to meet their obligations under the Act, a far different question of reviewability might be presented.

For the reasons stated above, defendants' motions to dismiss must be granted.

### III. The Merits

■ Even if it is assumed that plaintiffs have standing to prosecute the action and that the administrative proceedings are reviewable at this time, we conclude that defendants are entitled to summary judgment to the extent prayed for in their motion.

The affidavits of Messrs. Oakes and Baer and the record as a whole establish that there was a reasonable basis for the Secretary's decision in approving the projects that are questioned by plaintiffs.

Although the point is not urged on us by plaintiffs, we recognize that some courts have held that cases involving circumstances similar to this one should not be decided on the merits by affidavits alone; however, we are unwilling to apply this so-called rule to the particular facts of this case. As discussed previously, the Community Development Act provides for a simplified and expeditious review by the Secretary. We feel that it is therefore proper to consider the affidavits in order to augment the necessarily meager administrative record that was before the Secretary.

We conclude that the Secretary's decision was reasonable and otherwise in accordance with the law. Defendants' motions for summary judgment must be granted. 5 U.S.C. § 706(2)(A). *Cf. Camp v. Pitts*, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973).

Order accordingly.

which was not expended in accordance with it, or for mandatory or injunctive relief."